**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHARI HUTCHINSON** | ) | **CASE NO: 1:08CV2966** |
| | ) | **JUDGE KATHLEEN M. O'MALLEY** |
| Plaintiff, | ) | |
| -vs- | ) | **<u>SECOND AMENDED COMPLAINT</u>** |
| | ) | |
| **CUYAHOGA COUNTY BOARD OF COUNTY COMMISSIONERS,** | ) | |
| et al., | ) | |
| Defendants. | ) | |

## INTRODUCTION

1. This is an action instituted under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the First and Fourteenth Amendment to the Constitution of the United States, along with pendent state claims for violations of rights on the basis of sexual orientation deprived under color of state law. Claims are also asserted under Charter 667 of the codified ordinances of the City of

Cleveland which prohibits discrimination in employment based on sexual orientation.

## JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, §§1343 (5) and (4) and 28 U.S.C. §1367.

## PARTIES

3. Plaintiff, SHARI HUTCHINSON, is a gay female citizen of the United States, was and continues to be at all relevant times an employee of the Cuyahoga County Support Enforcement Agency ("CSEA") after completing years of success in the private sector.

4. Defendant CUYAHOGA COUNTY BOARD OF COUNTY COMMISSIONERS has and continues to be at all relevant times a governmental employer and otherwise engaged in conduct, acts and practices under color of state law with respect to the policies and administration of CSEA.

5. Defendant JOE GAUNTNER was, from September, 2007 through May, 2008, Acting Director of CSEA and otherwise engaged in conduct, acts and practices restricting employment opportunity under color of state law on the basis of sexual orientation.

6. Defendant JAMES VIVIANI was at all relevant times Social Administrator VI or Director of CSEA and otherwise engaged in conduct, acts

and practices restricting employment opportunity under color of state law on the basis of sexual orientation.

7. Defendant TONY SHARABA was at all relevant times Deputy Director of Client Services of CSEA and otherwise engaged in conduct, acts and practices restricting employment opportunity under color of state law on the basis of sexual orientation.

8. Defendant MARY JANE COLEMAN was at all relevant times Manager of Enforcement of CSEA or Manager of Specialty Enforcement of CSEA and otherwise engaged in conduct, acts and practices restricting employment opportunity under color of state law on the basis of sexual orientation.

**Count I - DISCRIMINATION AND RETALIATION**

9. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

10. Although, since January, 2001, Section 1.02 of the Affirmative Action policy of Cuyahoga County prohibits discrimination and retaliation based on sexual orientation, a pattern and practice of anti-gay preferences has existed at CSEA because, in part, defendant Cuyahoga County Board of County Commissioners has systematically refused to enforce practices which discriminate against employees on the basis sexual orientation.

11. Notwithstanding vastly superior academic, private sector and work experience compared to persons selected by the defendants, defendants have rejected plaintiff from 22 of 25 positions in less than seven years.

12. Plaintiff's personnel file contained only one write-up in nearly seven years which write-up was entered by defendant Coleman because of the sexual orientation of the plaintiff and where similar conduct involving straight employees has not resulted in disciplinary action.

13. Defendants have only permitted plaintiff to have employment in jobs significantly below her levels of education and employment while straight employees have been advanced and promoted with lower levels of education and employment history.

14. In October, 2002, plaintiff Shari Hutchinson was hired by the defendants as a Support Officer 1 for CSEA, performed successfully and remained in that position through April, 2003 having left at that time for other public service.

15. In late 2003 to early 2004, discussions within management focused on the hiring of an Administrative Assistant and the plaintiff was interviewed for the position.

16. Defendants Coleman and Sharaba opposed hiring plaintiff for the Administrative Assistant position because of her sexual orientation and defendants also refused to rehire plaintiff as a Support Officer 1 in May, 2004.

17. In June, 2004, in order to keep the plaintiff out of the management offices where defendants Coleman and Sharaba worked, plaintiff was hired as a Senior Account Clerk, a position significantly inferior to her work experience and education.

18. Plaintiff was placed in the financial department and performed so successfully that a supervisor broadened her work responsibilities because of her efficiency and excellent work performance.

19. In April, 2005, CSEA posted a new position, Business Administrator I.

20. Plaintiff, because of her education, private sector experience and exemplary performance at CSEA, was especially interested in the new position and was told by the manager that he had held up the posting until she was off probation so that she could get the job.

21. CSEA gave the position to a straight female with little education and no financial experience.

22. In May 2005, plaintiff applied for the Administrative Assistant position for the Specialty Enforcement Manager, defendant Coleman.

23. Defendants hired a substantially less credentialed straight male in order to avoid hiring plaintiff because of her sexual orientation.

24. In May, 2005, having graduated #1 in her 2002 training class with a rating of 99%, plaintiff sought to be promoted back to a Support Officer 1 in Regular Enforcement, the most challenging aspect of CSEA involving roughly

2,000 cases per worker and considered to be the most critical work at the agency with regard to the federal requirements.

25. In November, 2005, plaintiff was promoted from a Senior Clerk to a Support Officer I, a position which ranked as low as the one she left in 2003.

26. Between November, 2005 through January, 2006, plaintiff continued training and graduated #1 in her class with a rating of 100%.

27. In January, 2006, notwithstanding, when defendants Coleman and Sharaba refused to promote the plaintiff to Regular Enforcement, the plaintiff was placed in the Interstate Unit under defendant Coleman's control while straight employees from plaintiff's class with substantially less credentials, education, experience and training scores were placed in Regular Enforcement under a different manager.

28. In March, 2006, plaintiff was removed from probation, but received "needs improvement" inclusions in her evaluation without any basis and as a means to restrict her advancement at CSEA.

29. The low evaluation and performance assessment were inconsistent with plaintiff's performance and resulted in worsening depression because of sexual orientation discrimination.

30. In May, 2006, plaintiff applied for the Administrative Officer position under defendant Sharaba's Client Services Enforcement Manager.

31. The position went to a straight person with less education, work experience and time at CSEA in order to avoid hiring plaintiff because of her sexual orientation.

32. In October, 2006, plaintiff applied for the Support Officer II position.

33. Defendants hired a substantially less credentialed straight person in order to avoid hiring plaintiff because of her sexual orientation, after limiting her presentation which no other candidate experienced.

34. Plaintiff was accused of challenging the "integrity" of an Administrative Officer as a result of her rejection for the promotion by defendant Sharaba. This accusation was copied in writing to all relevant hiring managers at CSEA.

35. In August, 2007, an opening for a Program Officer IV Supervisor arose which paid nearly twice what plaintiff was earning and for which plaintiff was recommended by a supervisor.

36. The position was one of the highest at CSEA and had been vacant for six months.

37. The position was available on the basis of a four-month temporary assignment.

38. Defendant Sharaba, in an effort to discourage the promotion of the plaintiff, told a supervisor that plaintiff writes for a "lesbian porno magazine" and her license plate, PACK8, has her lesbian "pen name."

39. Defendants Coleman and Sharaba knew plaintiff was the best qualified candidate, but opposed the appointment of the plaintiff despite her credentials on account of her sexual orientation.

40. Despite Director McArthur's appointment of the plaintiff to the temporary assignment, defendants Coleman and Sharaba delayed her entry by over four weeks, requiring an official vote by the defendant Cuyahoga County Board of County Commissioners.

41. For straight candidates, in past temporary assignments, the transfer was made well before the commissioners' vote so that necessary work could go forward.

42. CSEA, despite its obligations to comply with state and federal regulations which would have been addressed by filling the position, chose to honor the views of defendants Gauntner, Coleman and Sharaba that they, individually and collectively, did not want an openly gay person working in the critical area of policy development.

43. In September, 2007, after only two weeks, the position was abolished, sending the plaintiff back to her original position at nearly half the pay.

44. On February 4, 2008, plaintiff put CSEA on notice that she believed she had been discriminated against and sought a transfer in order to avoid the pain and hardship of the discrimination she had suffered.

45. On February 8, 2008, CSEA's Acting Director refused the transfer.

46. Thereafter, plaintiff sought appointment as Support Enforcement Manager which required, among other elements, a bachelor's degree in business administration.

47. On June 19, 2008, after defendants learned of plaintiff's interest, and a straight male candidate failed to pass the required test the plaintiff had already passed, the position was "pulled" even though it had been vacant for nine months.

48. In December, 2007, at the same time the Administrative Officer position which plaintiff had expressed interest in was "pulled" and remained vacant.

49. Plaintiff reiterated to defendant Viviani that she believed she has continued to suffer discrimination on the job.

50. Plaintiff has a master's degree in business administration and an undergraduate degree from the University of Virginia in addition to substantial business experience.

51. Even though both positions were posted and applications had been received, the plaintiff was not allowed to interview.

52. In February, 2008, as "punishment" resulting from a discriminatory write-up defendant Coleman issued the plaintiff, defendants moved plaintiff in March, 2008 to an area where she had no experience or training.

53. In March, 2008, defendants had available another temporary assignment of the same Program Officer IV position for which plaintiff would have been well suited, but did not offer her the position.

54. Defendant Viviani refused to recommend plaintiff's hiring, openly telling management that plaintiff was "bizarro."

55. The temporary position went to a straight female with less work experience, with defendant Viviani hiring and paying a consultant to help the less credentialed individual perform the work.

56. When defendants learned that plaintiff may have secured legal counsel, records reflecting comparables including other less qualified candidate, defendants destroyed the evidence reflecting comparable credentials of the candidates.

57. After the plaintiff's complaint about job discrimination, defendants re-posted the positions of Support Enforcement Manager for pay up to roughly $72,000 and Administrative Officer for pay up to roughly $58,000.

58. Defendants finally hired the plaintiff for the least-influential and lowest –paid Administrative Officer position, but made it difficult for her to perform her duties while she is on probation.

59. When the plaintiff asked defendant Viviani for an Advanced Step Placement which would have increased her starting salary to $52,000 based on her over-qualification for the Administrative Officer position, he refused with

no explanation even though he had just granted an Advanced Step Placement for a male straight employee.

60. The acts and conduct of the defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the plaintiff.

61. The unlawful employment practices and retaliation of the defendants were done with reckless indifference to the federally protected rights of the plaintiff and state statutory rights of the plaintiff.

62. The effect of the acts and conduct complained of against the defendants has been to deprive plaintiff of equal employment opportunities on the basis of sexual orientation and to have retaliated against plaintiff for complaining about such actions.

63. The unlawful employment practices and retaliation of the defendants were done with reckless indifference to the federally protected rights of the plaintiff and state statutory rights of the plaintiff.

64. As a result of the acts and conduct of the defendants, the plaintiff has suffered substantial physical and emotional injury, loss of employment opportunities, diminution in the quality of life and loss of income.

**Count II - DISCRIMINATION IN TERMS AND CONDITIONS OF HEALTH CARE INSURANCE AND BENEFITS**

65. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

66. For 2009, in order to save health care costs for the county, defendants will credit straight females in a conventional marriage roughly $100 per pay period when they participate in health and insurance benefits of their spouses.

67. Plaintiff participates in the health benefits program of her female partner but will be credited roughly $50 per pay period even though she participates in her partner's program and saves the county the same amount of money as a straight employee.

68. So, for 2009, defendants, under color of state law, discriminate in the terms and conditions of benefits solely on the basis of sexual orientation.

69. The acts and conduct of the defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the plaintiff.

70. The unlawful employment practices and retaliation of the defendants were done with reckless indifference to the federally protected rights of the plaintiff and state statutory rights of the plaintiff.

71. The effect of the acts and conduct complained of against the defendants has been to deprive plaintiff of equal employment opportunities on the basis of sexual orientation and to have retaliated against plaintiff for complaining about such actions.

72. The unlawful employment practices and retaliation of the defendants were done with reckless indifference to the federally protected rights of the plaintiff and state statutory rights of the plaintiff.

73. As a result of the acts and conduct of the defendants, the plaintiff has suffered substantial physical and emotional injury, loss of employment opportunities, diminution in the quality of life and loss of income.

**Count III – VIOLATION OF ASSOCIATIONAL AND FREE SPEECH, PRESS RIGHTS**

74. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

75. In August, 2007, an opening for a Program Officer IV Supervisor arose which paid nearly twice what plaintiff was earning and for which plaintiff was recommended by a supervisor.

76. The position was one of the highest at CSEA and had been vacant for six months.

77. The position was available on the basis of a four-month temporary assignment.

78. Defendant Sharaba, in an effort to discourage the promotion of the plaintiff, told a supervisor that plaintiff writes for a "lesbian porno magazine" and her license plate, PACK8, has her lesbian "pen name."

79. Defendants Coleman and Sharaba knew plaintiff was the best qualified candidate, but opposed the appointment of the plaintiff despite her credentials on account of her sexual orientation.

80. Despite Director McArthur's appointment of the plaintiff to the temporary assignment, defendants Coleman and Sharaba delayed her entry by over four weeks, requiring an official vote by the defendant Cuyahoga County Board of County Commissioners.

81. For straight candidates, in past temporary assignments, the transfer was made well before the commissioners' vote so that necessary work could go forward.

82. CSEA, despite its obligations to comply with state and federal regulations which would have been addressed by filling the position, chose to honor the views of defendants Gauntner, Coleman and Sharaba that they, individually and collectively, did not want an openly gay person working in the critical area of policy development.

83. In September, 2007, after only two weeks, the position was abolished, sending the plaintiff back to her original position at nearly half the pay.

84. The adverse actions by the defendants and by defendant Sharaba in particular, were motivated by the perceived association of the plaintiff with lesbians and because she maintained as lesbian "pen name" and because of plaintiff's perceived publication in a lesbian "magazine."

85. The acts and conduct of the defendants were intentional, malicious and in wanton and reckless disregard of the rights and feelings of the plaintiff.

86. The unlawful employment practices and retaliation of the defendants were done with reckless indifference to the federally protected rights of the plaintiff and state statutory rights of the plaintiff.

87. The effect of the acts and conduct complained of against the defendants has been to deprive plaintiff of equal employment opportunities under color of state law because of her perceived associations and because of her perceived publication.

88. The unlawful employment practices and retaliation of the defendants were done with reckless indifference to the federally protected rights of the plaintiff and state statutory rights of the plaintiff.

89. As a result of the acts and conduct of the defendants, the plaintiff has suffered substantial physical and emotional injury, loss of employment opportunities, diminution in the quality of life and loss of income.

## **PRAYER FOR RELIEF**

Wherefore, plaintiff SHARI HUTCHINSON, urges this Court to grant the following relief:

A. Declare that the acts and conduct of the defendant, jointly and severally, constitute unlawful actions under color of state law in violation of the First and Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983 and Chapter

667 of the codified ordinances of the City of Cleveland;

B. Grant a permanent injunction enjoining defendant employer and the remaining defendants, their officers, members, successors, assigns, and all persons in active concert or participation with it, from engaging in sex discrimination, retaliation, and any other unlawful employment practices under color of state law which discriminate on the basis of sexual orientation prohibited by the First and Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act of 1871 and Chapter 667 of the codified ordinances of the City of Cleveland;

C. Order defendants not to retaliate in any respect against the plaintiff by depriving her of employment opportunities and benefits within county government;

D. Order defendants to make plaintiff whole by providing compensation for past and future losses resulting from the unlawful practices complained of, including past and future losses relating to medical bills arising out of related injuries, emotional pain, suffering, loss of enjoyment of life, inconvenience, humiliation and other related costs in an amount to be determined at trial.

E. Order defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for persons irrespective of sexual orientation which correct the effects of their past and present unlawful employment practices.

F. Order defendants, other than the county, to pay plaintiff punitive and exemplary damages for their intentional, malicious and reckless conduct in an amount to be determined at trial.

G. Order defendants to pay plaintiff costs and statutory reasonable attorney fees.

H. Grant such further relief as the court deems necessary, proper, just and equitable in the public interest.

s/Avery Friedman

AVERY S. FRIEDMAN (0006103)
Friedman & Associates
701 The City Club Building
850 Euclid Avenue
Cleveland, OH 44114-3358
(216) 621-9292
FAX 621-9283
averyfriedman@hotmail.com

Attorney for Plaintiff Shari Hutchinson

**CERTIFICATE OF SERVICE**

I, Avery S. Friedman, attorney for the plaintiff, hereby certify that a copy of the foregoing Second Amended Complaint was filed electronically and was served on all parties by U.S. Certified Mail on this 2nd day of January, 2009.

s/Avery Friedman
AVERY S. FRIEDMAN