UNITED STATES DISTRICT COURT
NORDERN DISTRICT OF OHIO
------------------------------------------------------
:
SHARI HUTCHINSON,                               :
                                                :    CASE NO. 1:08-CV-2966
         Plaintiff,                             :
                                                :
    v.                                          :    OPINION & ORDER
                                                :    [Resolving Doc. No. 41]
CUYAHOGA COUNTY BOARD OF                        :
COUNTY COMMISSIONERS, *et al.*,                 :
                                                :
         Defendants.                            :
                                                :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this sexual orientation discrimination case, Defendants Cuyahoga County Board of County Commissioners, Joe Gauntner, James Viviani, Tony Sharaba, and Mary Jane Coleman move, under Federal Rule of Civil Procedure 12(c), for judgment on the pleadings. [Doc. 41.] Plaintiff Shari Hutchinson opposes the motion. [Doc. 48.] For the following reasons, this Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for judgment on the pleadings.

**I. Background**

Plaintiff Hutchinson asserts this discrimination and retaliation action against her employer, Cuyahoga County Board of County Commissioners, and Cuyahoga County Support Enforcement Agency (CSEA) administrators Gauntner, Viviani, Sharaba, and Coleman, in their official capacities. Hutchinson says that the Defendants did not hire her for, or did not promote her to, various job openings within the CSEA because of her sexual orientation. [Doc. 23.] Hutchinson also alleges that

-1-

Case No. 1:08-CV-2966
Gwin, J.

the County's policy for awarding health care coverage opt-out credits discriminates against homosexuals. [*Id*.] Hutchinson brings her claims under 42 U.S.C. § 1983, which prohibits the deprivation of federal rights by those acting under the color of state law.

Hutchinson, a gay woman, says she began working for the CSEA in October 2002 as a support officer but briefly left employment with the County in late 2003. After unsuccessfully applying for an administrative assistant position and a support officer position with CSEA in 2004, Hutchinson says, she was hired back as a senior account clerk in June 2004. Hutchinson alleges that Defendant Coleman, a CSEA Manager, and Defendant Sharaba, CSEA Director of Client Services, refused to hire her for the administrative assistant or support officer positions—and ultimately hired her for the account clerk position, which Hutchinson says was inferior to her qualifications—because of her sexual orientation. [*Id.* at 4-5.]

Hutchinson says that in April 2005, despite her successful performance as an account clerk, the Defendants did not select her application for a business administrator position and instead hired a straight female with less education and financial experience. [*Id.* at 5.] The next month, Hutchinson says, the Defendants moved her back to the support officer position she held in October 2002. [*Id. at 5-6*.] Hutchinson says she later unsuccessfully applied, in May 2006 and October 2006, for promotion to positions that went to less qualified heterosexual candidates. [*Id.* at 7-9.]

Hutchinson alleges that when she was then appointed to a temporary program officer supervisor position in August 2007, the Defendants purposefully delayed Hutchinson's appointment by four weeks because of her sexual orientation. Hutchinson says that no other straight candidate's temporary appointment was similarly delayed. [*Id.* at 11.] And, two weeks later, Hutchinson says the Defendants abolished that four-month temporary position, demoting Hutchinson back to a support

-2-

Case No. 1:08-CV-2966
Gwin, J.

officer job. [*Id.* at 12.]

In December 2007, June 2008, and January 2009, Hutchinson says the Defendants kept various positions—in which Hutchinson had expressed interest or was the most qualified candidate—vacant to avoid having to appoint Hutchinson. [*Id.* at 14, 20.] Moreover, in March 2008, Hutchinson says Defendant Viviani, CSEA director, refused to recommend Hutchinson to a temporary program officer position, telling other CSEA management officers that Hutchinson was "bizarro" because of her sexual orientation. The temporary position, Hutchinson alleges, was given to a less qualified heterosexual female candidate. [*Id.* at 16.] And, Hutchinson says, the Defendants instead placed Hutchinson in the least-influential and lowest paid administrative officer position available. When Hutchinson asked Defendant Viviani for a salary increase, she says Viviani denied the increase despite having just granted one to a straight male employee. [*Id.* at 17-19.]

Lastly, Hutchinson's complaint alleges that throughout Hutchinson's employment at CSEA, the Defendants denied her the $100-per-paycheck credit awarded employees who opt out of the County's health care coverage in favor of coverage for themselves and their dependents under a spouse's plan. Hutchinson says she opted out of the County's plan in favor of coverage under her domestic partner's plan, but received only the $50-per-paycheck opt-out credit granted to employees with no dependents. [*Id.* at 22-23.] Hutchinson says this differential treatment amounts to discrimination against homosexual employees who are covered under a domestic partner's plan. [*Id.* at 24.]

Based on these allegations, Hutchinson says the Defendants impermissibly deprived her of equal employment opportunities, and retaliated against her, based on her sexual orientation. She

Case No. 1:08-CV-2966
Gwin, J.

alleges that the Defendants are liable for such equal protection violations under 42 U.S.C. § 1983.[1/] [Doc. 23.]

The Defendants now move for judgment on the pleadings, arguing that Hutchinson's sexual orientation discrimination claims fail on several grounds. First, the Defendants say that Hutchinson alleges several discrete instances of discrimination that are barred by the two-year statute of limitations applicable to all Hutchinson's § 1983 claims. Second, they contend that all Hutchinson's claims must fail, as sexual orientation discrimination is not an actionable equal protection violation in the public employment context. Third, the Defendants argue that Hutchinson's health care coverage claim fails because her ineligibility for the $100 insurance opt-out credit was based on her marital status, not her sexual orientation. Finally, the Defendants contend that they are ultimately entitled to judgment on the pleadings because Hutchinson does not state grounds sufficient to impose municipal liability under § 1983. [Doc. 41-1.]

## II. Legal Standard

On a motion for judgment on the pleadings under Federal Civil Rule 12(c), the Court employs the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). Thus, "'[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Id.* (citation omitted). Additionally, on a 12(c) motion, the Court may consider exhibits incorporated by reference

---

[1/]In her complaint, Hutchinson also alleges due process and First Amendment violations. To the extent that she includes any factual allegations supporting such claims, the parties' briefing on the instant motion for judgment on the pleadings exclusively addresses Hutchinson's equal protection claims.

-4-

Case No. 1:08-CV-2966
Gwin, J.

into the pleadings. *Haeberle v. University of Louisville*, 90 Fed. Appx. 895, 897 n.1 (6th Cir. 2004) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

### III. Analysis

*A. Statute of Limitations*

The Court first addresses the Defendants argument that several of Hutchinson's claims are time-barred because she brings them beyond § 1983's two-year limitations period. [Doc. 41-1 at 4.]

In evaluating the timeliness of a § 1983 claim, the Court looks to the most closely-related state statute of limitations, which, in Ohio, is the general limitations period for personal injury actions. *Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989) (citing *Owens v. Okure*, 488 U.S. 235 (1989)). The Sixth Circuit has held that the statute of limitations for § 1983 claims in Ohio is two years. *Id.* This two-year period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kuhnle Bros., Inc., v. County of Geauga*, 103 F.2d 516 (6th Cir. 1997).

The parties agree that several discriminatory acts of which Hutchinson complains occurred more than two years before she filed the instant suit on December 19, 2008. However, Hutchinson invokes one category of the continuing violations doctrine, which tolls the limitations period where there is a "long-standing and demonstrable policy of discrimination," *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003), to save her claims predicated on these otherwise time-barred act. [Doc. 48 at 4.]

Yet Hutchinson's complaint pleads no facts suggesting that this theory of continuing violations applies here. As the Sixth Circuit has stated, "[t]o establish this category of continuing violation, [a plaintiff] must demonstrate something more than the existence of discriminatory

-5-

Case No. 1:08-CV-2966
Gwin, J.

treatment in [her] case." *Sharpe*, 319 F.3d at 268 (quoting *Haithcock v. Frank*, 958 F.2d 671, 679 (6th Cir. 1992)) (internal quotations omitted). The court of appeals has emphasized that to satisfy the "longstanding" requirement, the alleged policy must extend beyond the plaintiff who invokes the continuing violations doctrine. *Haithcock*, 958 F.2d at 679 (policy to get rid of an employee for discriminatory reasons does not qualify as "longstanding;" citing a statutory policy or affirmative action plan as examples of longstanding policies); *see also Abuobeid v. Hargus*, No. 08-cv-762, 2010 WL 1849281, at *5 (S.D. Ohio May 3, 2010) (the policy must extend beyond discrimination against the plaintiff).

Hutchinson does not allege any facts that, if proved, support finding a longstanding and demonstrable policy of sexual orientation discrimination. Hutchinson alleges a series of separate acts of non-selection. *See Burzynski v. Cohen*, 264 F.3d 611, 618 (6th Cir. 2001) (discrete acts of non-selection not sufficient to establish a continuing violation). Hutchinson's allegations do not extend beyond discriminatory treatment in her own case. *See Haithcock*, 958 F.2d at 679. Her complaint includes no allegations of any other County employee's discriminatory non-selection or non-promotion on the basis of sexual orientation. Though, as later discussed, Hutchinson's allegations that this discriminatory treatment arose pursuant to an unofficial County custom do sufficiently allege her claim for municipal liability, they do not suggest the type of longstanding and demonstrable policy sufficient to invoke the continuing violations doctrine.

Hutchinson urges that the applicability of this continuing violations doctrine cannot be determined until after discovery, upon consideration of a full evidentiary record. [Doc. 48 at 6.] However, on a motion for judgment on the pleadings, the Court cannot ignore that Hutchinson has not even alleged facts that, if ultimately supported by evidence, warrant application of this

-6-

Case No. 1:08-CV-2966
Gwin, J.

continuing violations theory. See *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (Rule 8's pleading standards require plaintiffs to state a plausible claim, and do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") (citations omitted).

Therefore, to the extent that some of Hutchinson's claims rest on discriminatory acts that occurred prior to December 19, 2006—two years before Hutchinson filed the instant suit—those claims are time-barred. The Court grants the Defendant's motion for judgment on the pleadings as to those claims.

### B. § 1983 Equal Protection Claim

The Defendants next argue all of Hutchinson's claims must fail because sexual orientation is not a protected class, and thus does not merit the constitutional protection, under the Equal Protection Clause, that Hutchinson seeks. [Doc. 41-1 at 8.] The Defendants say that because employment-related equal protection allegations brought under § 1983 require "the same showing required to prove a violation of Title VII," *Watson v. City of Cleveland*, 202 Fed. Appx. 844, 856 (6th Cir. 2003), and because "sexual orientation is not a prohibited basis for discriminatory acts under Title VII," *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 762 (6th Cir. 2006), Hutchinson cannot make out a prima facie case of orientation discrimination. Responding, Hutchinson concedes that sexual orientation is not a protected class under Title VII, but argues that such categorization is inapposite here, as she does not make any Title VII claims. [Doc 48 at 7.]

Because this Court concludes that the Defendants' wholesale reliance on Title VII standards is misplaced, and that Hutchinson's equal protection claim should ultimately be subject to rational

Case No. 1:08-CV-2966
Gwin, J.

basis review,[2/] it denies the Defendants' motion for judgment on these grounds.

The Sixth Circuit has utilized the Title VII framework for analyzing claims of intentional employment discrimination when presented as public employment-related equal protection claims under § 1983. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 566-67 (6th Cir. 2004) ("To prove a violation of the equal protection clause under section 1983, a plaintiff must prove the same elements . . . as are required to establish a disparate treatment claim under Title VII, i.e., under the *McDonnell Douglas/Burdine* framework.") (quoting *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003)).

Accordingly, absent evidence of direct discrimination, the familiar framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802-04). Ordinarily, to make out a prima facie case of discrimination—the first step of the *McDonnell Douglas* analysis—a plaintiff must show that: (1) she is a member of a protected class; (2) she was otherwise qualified for promotion or hire; (3) she was denied promotion or hire; and (4) she was treated differently from similarly-situated employees outside the protected class. *See, e.g.*, *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009) (describing elements of

---

[2/]In general, such rational basis review would require plaintiffs alleging an equal protection violation to show that the defendants treated her differently from similarly-situated individuals because of her sexual orientation and—because sexual orientation does not call for heightened protection under the Constitution, *see, e.g.*, *Romer v. Evans*, 517 U.S. 620, 634-35 (1996)—that the discrimination was not rationally related to a legitimate state interest.

-8-

Case No. 1:08-CV-2966
Gwin, J.

prima facie case in failure-to-promote context).

The Defendants say that Hutchinson's equal protection claims fail at the first step of *McDonnell Douglas*. As sexual orientation is not a protected class under Title VII, they insist, Hutchinson cannot make out a prima facie case of employment discrimination. [Doc. 41-1 at 9.] To this end, the Defendants cite several cases where courts have rejected a plaintiff's sexual orientation claims under Title VII. *See, e.g.*, *Vickers*, 453 F.3d at 762 (rejecting Title VII sexual orientation claim but declining to address plaintiff's equal protection claims as not presented on appeal); *Aaron v. Adecco USA, Inc.*, No. 07-cv-1038, 2007 WL 1795946 (N.D. Ohio June 20, 2007) ("[S]exual orientation is not a prohibited basis for discriminatory acts under Title VII regardless of the defendant."); *Kiley v. Am. Soc'y for the Prevention of Cruelty to Animals*, 296 Fed. Appx. 107 (2d Cir. 2008) (sexual orientation is not included in Title VII's statutorily protected class). By the Defendants' logic, because Title VII does not recognize sexual orientation discrimination, and Title VII's framework applies to employment-based equal protection claims, a public employer's sexual orientation discrimination cannot present an actionable equal protection violation.

This logical leap, requiring imposition of all Title VII's standards and limitations in the employment-based equal protection context, is largely unsubstantiated. The Defendants exclusively rely on Title VII case-law to support their argument. And, for the proposition that an employee's sexual orientation discrimination claim under § 1983 must fail because Title VII provides no right of action based on sexual orientation, the Defendants cite a single case: the Seventh Circuit's opinion in *Schroeder v. Hamilton School District*, 282 F.3d 946 (7th Cir. 2002). The Defendants do not mention, however, that the *Schroeder* court explicitly declined to import Title VII standards into its equal protection analysis. *Id.* at 951. Indeed, the Defendants misrepresent *Schroeder*'s holding,

Case No. 1:08-CV-2966
Gwin, J.

which works against their argument by applying a traditional equal protection analysis to the plaintiff employee's sexual orientation discrimination claim. After finding no right of action for sexual orientation discrimination under Title VII, the *Schroeder* court separately considered the plaintiff's employment discrimination claims under an equal protection lens. The Seventh Circuit ultimately concluded that the plaintiff had no cause of action—not because sexual orientation is not a protected class, but rather because the plaintiff had not demonstrated the disparate treatment necessary to maintain an equal protection claim. *Id.* at 952.

Moreover, courts in the Sixth Circuit have applied rational basis review to sexual orientation discrimination claims under § 1983, even where they have also applied Title VII's framework to the equal protection allegations. In *Glover v. Williamsburg Local School District Board of Education*, 20 F. Supp. 2d 1160 (S.D. Ohio 1998), for instance, the Southern District of Ohio considered a teacher's § 1983 equal protection claim, which alleged that the school board did not renew his teaching contract due to his sexual orientation. The court initially noted that "[h]omosexuals, while not a 'suspect class' for equal protection analysis, are entitled to at least the same protection as any other identifiable group which is subject to disparate treatment by the state." *Id.* at 1169 (citing *Stemler v. City of Florence*, 126 F.3d 856, 874 (6th Cir. 1997)). Applying Title VII's burden-shifting framework to Glover's claim, the district court found that Glover had established a prima facie case, and had shown the board's purported reason for his nonrenewal was pretextual. *Id.* at 1170-74. The court ultimately concluded that Glover had established an equal protection claim. *Id.* at 1174. Then, subjecting the school board's nonrenewal decision to rational basis review, the court found that the board had presented no evidence "to support a legitimate rationale for discriminating against homosexual teachers." *Id.*. See also *Beall v. London City Sch. Dist. Bd. of Educ.*, No. 04-cv-290,

Case No. 1:08-CV-2966
Gwin, J.

2006 WL 1582447, at *7 (S.D. Ohio, June 8, 2006) (analyzing employee's sexual orientation equal protection claim under Title VII burden-shifting framework and noting that homosexuals, though not a suspect class, are entitled to constitutional protection as an identifiable group subject to disparate treatment by the state).

Additionally, in *Scarbrough v. Morgan County Board of Education*, 470 F.3d 250 (6th Cir. 2006), the Sixth Circuit addressed a plaintiff's allegations that his school board employer did not rehire him due to his affiliation with an event attended by homosexuals, and had instead hired an openly anti-gay candidate. The court of appeals noted that because "homosexuality is not a suspect class in this circuit," those who associate with homosexuals were not a suspect class, either. *Id.* at 261. However, the court did subject the *Scarbrough* plaintiff's sexual orientation equal protection claims to rational basis review. The court noted that "a state action based on that animus [against homosexuals] alone violates the Equal Protection Clause," and found sufficient evidence that the county board had been improperly motivated by such animus. *Id.* (quoting *Stemler*, 126 F.3d at 873-74). Though the facts of *Scarbrough* more directly implicate the right to associate, it is unclear why alleged equal protection violations based on an employee's association with homosexuals should be afforded rational basis review, while alleged equal protection violations based on an employer's discrimination against a homosexual employee should be entirely precluded.[3]

Against this backdrop, the Court concludes that an employee who alleges sexual orientation discrimination under § 1983 is not *per se* precluded from establishing an equal protection claim

---

[3] Contrary to the Defendants' assertion, the *Scarbrough* court did not address the plaintiff's claim under the now-disfavored class-of-one theory. Instead, the court of appeals recognized that the class-of-one theory *could* apply to warrant strict scrutiny review of the plaintiff's claims, but it declined to do so and instead subjected the alleged disparate treatment to rational basis review. *Scarbrough*, 470 F.3d at 260-61.

-11-

Case No. 1:08-CV-2966
Gwin, J.

against her employer.[4/] Simply because Title VII does not include sexual orientation as a statutorily protected class does not, in this Court's view, automatically remove all constitutional protection where a plaintiff employee claims equal protection violations based on her membership in that class. The Court is not convinced that application of Title VII's *framework*—i.e. the *McDonnell Douglas/Burdine* framework, *Singfield*, 389 F.3d at 566-67—requires wholesale application of Title VII's limitations on what classes are protected whenever an equal protection claim arises in the employment context. Though sexual orientation may not be a suspect or quasi-suspect class, the Court finds that constitutional disparate treatment claims alleging sexual orientation discrimination by a public employer at least garner the bare minimum of rational basis review.

Accordingly, because Hutchinson's complaint states that the County did not hire or promote her to a number of positions for which she was qualified because of her sexual orientation, and that the County did not treat heterosexual job candidates similarly, the Court finds that Hutchinson has pled plausibly actionable equal protection claims under § 1983.

### C. Health Insurance Credit

Yet Hutchinson's separate claim—that the Defendants discriminated against her on the basis of sexual orientation when they denied her the maximum $100 credit for declining health care coverage under the County's program—fails, because Hutchinson can prove no set of facts to show that she was otherwise qualified for the $100 credit, or that the County's health insurance coverage could fail rational basis review.

---

[4/]Although the Court recognizes that slightly different standards apply to the government-as-employer than do to the government-as-sovereign, the Defendants' fear that applying rational basis review to the constitutional violations alleged here would open the floodgates of employment litigation involving government employers, [Doc. 53 at 10], is unfounded. The Court will not belabor the point. It is enough to point out that the obligation to show pretext under Title VII's burden-shifting framework and the hurdle of surpassing rational basis review will not facilitate frivolous litigation in "all public employment actions." [*Id.*]

Case No. 1:08-CV-2966
Gwin, J.

Hutchinson says that when she opted out of the County's health insurance program in favor of coverage under her domestic partner's employer's program, the County gave her only the $50 credit designated for single employees with no dependents. Because the County's program allows a $100 per paycheck opt-out credit for a married (heterosexual) employee who declines coverage for herself and her spouse, Hutchinson says the program's failure to provide a similar opt-out incentive for the County's homosexual employees amounts to sexual orientation discrimination. [Doc. 48 at 16-18; Doc. 23 at 21-25.]

Hutchinson, however, does not allege that she is married. The County's health insurance program provides coverage only for employees and their dependents, which includes legally married spouses but not unmarried heterosexuals living together. [Doc. 23 at 22-23.] Thus, the program views Hutchinson's domestic partnership no differently than a heterosexual employee's domestic partnership: neither partnership qualifies for the additional opt-out credit. If an unmarried employee (homosexual or heterosexual) with no children opts out of coverage under the County's plan, then, the most she could possibly "save" the County is the cost of her own coverage, recognized by the County's $50 opt-out credit. Similarly, if a married employee with no children declines coverage for her spouse but not herself, she is entitled only to the $50 opt-out credit, having "saved" the County only the cost of one person's health care coverage.

Regardless of sexual orientation, Hutchinson, as an unmarried employee with a domestic partner and no children, would not have otherwise qualified for the $100 credit under the County's opt-out scheme. Though Hutchinson may urge the County to include domestic partners as qualifying dependents under its program, the County's program equally excludes gay and straight domestic partners. And, though this facially neutral policy may, at some level, disparately impact homosexual

Case No. 1:08-CV-2966
Gwin, J.

employees, it is not without a rational basis. In addition, to the extent that Hutchinson's claim really targets her inability to qualify for the $100 credit by legally marrying her domestic partner, that challenge is one better directed at the Ohio legislature's ban on same-sex marriage.

Accordingly, the Court grants the Defendants' motion for judgment on the pleadings as to Hutchinson's health insurance coverage and opt-out claim.

*D. Municipal Liability*

Lastly, the Defendants argue that even if Hutchinson can allege plausible equal protection violations, under § 1983, her claims nonetheless fail because she cannot show that a County policy or custom caused the violations.[5/] [Doc. 41-1 at 17-20; Doc. 53 at 13.]

To succeed on a § 1983 claim for relief against a municipality, a plaintiff must prove that the violation of a federal right occurred as the result of an illegal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality may not be held liable under § 1983 simply upon the theory of *respondeat superior*. *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005). Instead, the governmental policy or custom, even a policy of inaction, must have been the moving force causing the alleged violation. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997); *Monell*, 436 U.S. at 694 ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.")

---

[5/]Hutchinson sues Defendants Gauntner, Viviani, Sharaba, and Coleman only in their official capacities. Accordingly, her claims against those Defendants are essentially claims against the County. *See Hafer v. Melo*, 502 U.S. 21, 24 (1991) ("[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal quotations omitted). Hutchinson does not argue that she sues these Defendants in their individual capacities. [Doc. 48.]

-14-

Case No. 1:08-CV-2966
Gwin, J.

A governmental policy or custom need not be formalized to give rise to liability under *Monell*. A plaintiff may allege that a municipality's unofficial custom or practice gives rise to *Monell* liability, where such custom is "so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne County, Tenn. ex rel Claiborne County Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). To have such force of law, the custom "must reflect a course of action deliberately chosen from among various alternatives." *Id.* (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993)).

At this early stage in the proceedings, and taking Hutchinson's factual allegations as true, the Court cannot say that Hutchinson can prove no set of facts that would support her entitlement to relief on a *Monell* claim against the County. *See* 5 Wright & Miller, Federal Practice and Procedure § 1368 (3d ed.) (judgment on the pleadings should be denied where allegations in the pleadings, if proved, would permit recovery). Hutchinson alleges that in executing a "pattern and practice of anti-gay preferences," [Doc. 23 at 3-4], the County demoted her from or did not hire her for several positions because of her sexual orientation, either keeping those positions vacant or hiring less qualified straight candidates. She also alleges that the County does not treat its heterosexual employees this way. [*Id.* at 12.] Though the specific incidents of discrimination against Hutchinson do not, on their own, constitute a municipal custom within the meaning of *Monell*, Hutchinson's allegations that these incidents occurred pursuant to municipal practice or custom, if proved, would support recovery on Hutchinson's § 1983 claims. *See Turpin v. Mailet*, 619 F.2d 196, 202 n.7 (2d Cir. 1980) ("Though *Monell* was concerned with a general policy enforced against a large class of

-15-

Case No. 1:08-CV-2966
Gwin, J.

individuals, it seems reasonable to conclude that its teachings are equally applicable to a specific policy directed at just one individual, as long as the pleaded facts support the inference that unconstitutional action was taken against the individual pursuant to such policy.") (quoting *Smith v. Ambrogio*, 456 F. Supp. 1130, 1134 n.3 (D. Conn. 1978)).

Though, as the Defendants argue, Hutchinson does not name a specific County lawmaker or policymaker "whose edicts established any custom or policy that violated [Hutchinson's] constitutional rights," [Doc. 53 at 13], the Court finds that to require such a showing in a complaint would inappropriately burden plaintiffs prior to discovery. Particularly because imposing municipal liability depends on evidence of a municipality's often internal authorization or decision-making practices, the Court declines to place such a burden on Hutchinson at the pleading stage. Accordingly, because the Defendants have not shown that all material *Monell* liability issues can be resolved on the pleadings, the Court denies the Defendants' motion on these grounds.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendants' motion for judgment on the pleadings as to those of the Plaintiff's claims that rest on instances of discrimination occurring outside the applicable two-year limitations period. The Court **DENIES** the remaining grounds for the Defendants' motion.

IT IS SO ORDERED.

Dated: April 25, 2011           s/ *James S. Gwin*
                               JAMES S. GWIN
                               UNITED STATES DISTRICT JUDGE